526 A.2d 46

**Michael OTT et al.**

v.

**KAISER–GEORGETOWN COMMUNITY HEALTH PLAN, INC.**

No. 125, Sept. Term, 1986.

Court of Appeals of Maryland.

June 4, 1987.

642

Gerard E. Mitchell (Patrick A. Malone, Stein, Mitchell & Mezines, on the brief), Rockville, for appellant.

Richard W. Boone, Arlington, Va., for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH,* McAULIFFE and ADKINS, JJ.

ADKINS, Judge.

In this case we are called upon to interpret certain provisions of the Maryland Health Care Malpractice Claims Act, codified at Cts. & Jud.Proc.Art., Title 3, Subtitle 2A, (the Act), and of the BY Rules promulgated to establish the procedure for bringing an action under the Act. We shall hold that appellants' compliance with the provisions relating to notice of rejection of an award and filing an action to nullify was sufficient to preclude dismissal of their malprac-

---

* COUCH, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also particpated in the decision and adoption of this opinion.

tice action against appellee in the Circuit Court for Montgomery County.

Appellants Michael Ott and his parents, James and Charlotte Ott, (the Otts) filed a claim under the Act against six defendants, including Dr. Robert M. Levitt and appellee, Kaiser-Georgetown Community Health Plan, Inc. (Kaiser). The claim charged that Dr. Levitt's negligence caused delay in Michael's birth and that the child suffered cerebral palsy as a result. Kaiser, a health care plan in which Mr. and Mrs. Ott were enrolled, was alleged to be Dr. Levitt's principal, and liable on a respondeat superior theory. Before arbitration four of the defendants were dropped from the case. On 15 October 1985 an arbitration panel rendered a decision in favor of the two remaining defendants, Dr. Levitt and Kaiser. The Otts filed a timely notice of rejection of the arbitration award with the Health Claims Arbitration Board, pursuant to § 3–2A–06(a).[1] Then, on 29 November 1985, they filed an "Action to Nullify Award" in the Circuit Court for Montgomery County, naming both Dr. Levitt and Kaiser as defendants. This was followed by a complaint in the same court, filed 30 December 1985, naming Dr. Levitt as the sole defendant. On the same day the Otts filed a pleading encaptioned "Line" and reading:

Mr. Clerk:

Plaintiffs herewith file a Complaint pursuant to Maryland Rule BY4 against defendant Robert H. Levitt, M.D. only. There is federal court jurisdiction over defendant Kaiser-Georgetown Community Health Plan, Inc., and plaintiffs have chosen to invoke federal court jurisdiction for the adjudication of their claim against Kaiser-Georgetown Community Health Plan, Inc.

Also on 30 December 1985 the Otts filed a complaint against Kaiser in the U.S. District Court for the District of Columbia.

---

1. All statutory citations are to the Cts. & Jud.Proc.Art., and to the Act as it read in 1985.

Kaiser moved for dismissal of the circuit court action and confirmation of the arbitration award, citing Rule BY4, which requires that the complaint (or "declaration," as it is called in the Rules)[2] be filed within 30 days in the same court where the "notice of action" was filed. The Circuit Court for Montgomery County (Mitchell, J.) granted the motion and entered final judgment as to defendant Kaiser. The Otts appealed following denial of their motion for reconsideration. We granted certiorari on our own motion.

I

■ In 1976 the General Assembly enacted the Health Care Malpractice Claims Act, which requires the submission of medical malpractice claims to an arbitration panel prior to the bringing of an action in court. The Act specifies procedures for arbitration of a claim and for seeking judicial relief when a party is unsatisfied with an award. If a claimant wishes to reject an award and proceed with the cause of action, the special procedures prescribed by the Act must be followed. *Tranen v. Aziz*, 304 Md. 605, 612, 500 A.2d 636, 639 (1985).

The mandatory arbitration requirement does not divest courts of subject matter jurisdiction over health claims, but rather " 'creates a condition precedent to the institution of a court action.' " *Tranen*, 304 Md. at 612, 500 A.2d at 639 (quoting *Oxtoby v. McGowan*, 294 Md. 83, 91, 447 A.2d 860, 865 (1982)). Upon fulfillment of the condition precedent, malpractice claims may be heard in court.

■ The final step in the arbitration process, an essential prerequisite to institution of judicial proceedings, is the filing of a notice of rejection with the director of the Arbitration Office. *Tranen*, 304 Md. at 612, 500 A.2d at

---

2. The Maryland Rules were extensively revised in 1984. Rules 2–101 and 2–302 now require that an action be commenced in circuit court by filing a "complaint." The BY Rules have not yet been amended to reflect this change. In the interest of consistency, we shall apply the current terminology and refer to the pleading as a complaint.

639; § 3–2A–06(a). Failure to file notice of rejection permits the arbitration award to become final and binding. *Tranen,* 304 Md. at 613, 500 A.2d at 640; § 3–2A–05(h).

The "exclusive step by which the aggrieved party may initiate proceedings in court," *Tranen,* 304 Md. at 612, 500 A.2d at 639, is the action to nullify the award. Section 3–2A–06(b). Although called an action to nullify, the proceeding is not analogous to an appeal from an administrative decision. Rather, the action is essentially a separate common law tort action with the added element that the arbitration process must be complete. *See Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978).

This Court promulgated rules to establish the procedures unique to the action to nullify. These rules are found at Subtitle BY of Chapter 1100 of the Maryland Rules. Rule BY2 provides that the action to nullify "shall be commenced by filing notice of the action with the clerk of a court. . . ." Rule BY4 requires the plaintiff, that is, the party making the claim against the health care provider, to file a complaint within 30 days after the filing of the notice of action, no matter which party rejects the award. Thus the Rules divide the action to nullify into a two-step process: a "notice of action" followed by a complaint. *Cherry v. Brothers,* 306 Md. 84, 507 A.2d 613 (1986); *Tranen.* Rule BY 4 a 2 states in pertinent part:

> If the plaintiff filed the notice of action, the [complaint] shall be filed in the court where the notice of action was filed. If the defendant filed the notice of action, the plaintiff may file the [complaint] in any court having venue.

The Otts acknowledge they did not comply strictly with this rule, but they claim they were confused by the distinctions among the notice of rejection, the notice of action, and the complaint. The confusion was compounded, they say, by the definitional section of the Act, which defines "court" as "a circuit court for a county." Section 3–2A–01(c). When the tactical decision was made to sue Kaiser in

federal court, the Otts read Rule BY2 to require the filing of the notice of action in a circuit court. They indicate they thought this was a requirement to perfect the matter for judicial action, much like the notice of rejection.

■ Because either party may reject an award, the obvious purpose of the two-step process is to address the situation where the defendant is unsatisfied by the decision of the arbitration panel. In such a case the defendant need only reject the award and file the notice of action in court. The plaintiff must then file a complaint.[3] Indeed, we have acknowledged that, where the plaintiff is rejecting the award, he or she may file a single pleading in court constituting both the notice of action and the complaint. *See Cherry,* 306 Md. at 90 n. 5, 507 A.2d at 616.

The Otts indicate they also considered the definition of "court" as a circuit court to be a vain attempt by the legislature to limit actions to nullify to state courts and thereby to divest the federal courts of jurisdiction. Section 3–2A–09 of the Act declares that the provisions of the Act shall be deemed procedural in nature. The U.S. District Court in *Davison v. Sinai Hospital of Baltimore,* 462 F.Supp. 778 (D.Md.1978), *aff'd,* 617 F.2d 361 (4th Cir.1980), interpreted this section as an indication that the legislature was not attempting to create a new cause of action in enacting the Act.[4] That court further declared that there was nothing in the legislative history to indicate that the legislature even considered the matter of federal jurisdic-

---

3. *See Golub v. Spivey,* 70 Md.App. 147, 155, 520 A.2d 394, 398 (1987).

4. The *Davison* court also held that the arbitration provisions of the Act were substantive for purposes of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Insofar as the arbitration process, including notice of rejection, must be completed before a cause of action arises in Maryland, those requirements are properly considered substantive, as we acknowledged in *Group Health Ass'n, Inc. v. Blumenthal,* 295 Md. 104, 108 n. 5, 453 A.2d 1198, 1202 (1983). Whether the action to nullify requirement would be considered substantive or procedural for purposes of the *Erie* doctrine was not before the court in *Davison.*

tion. *Davison,* 462 F.Supp. at 779. Necessarily, the legislature could not have intended the Act to divest the federal courts of jurisdiction over malpractice claims where diversity requirements were met. *See Group Health Ass'n, Inc. v. Blumenthal,* 295 Md. 104, 453 A.2d 1198 (1983) (acknowledging federal diversity jurisdiction over malpractice claims). Presumably the legislature is aware that it cannot deprive federal courts of jurisdiction. *See Chicago & Northwestern Rwy. Co. v. Whitton,* 80 U.S. (13 Wall.) 270, 20 L.Ed. 571 (1872); *Beach v. Owens-Corning Fiberglas Corp.,* 728 F.2d 407 (7th Cir.), *cert. denied,* 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984); *Duchek v. Jacobi,* 646 F.2d 415 (9th Cir.1981).

In *Duchek* the U.S. Court of Appeals for the Ninth Circuit examined the effect upon a federal court's jurisdiction of a state statute facially requiring that proceedings be held before a state tribunal, where the federal rules required the federal court to follow state procedure. The proceeding was one to enforce a judgment. The applicable statute required that " '[t]he petition *must* be filed with the clerk of the superior court.' " 646 F.2d at 417 [emphasis from Ninth Circuit]. In upholding the jurisdiction of the District Court, the Ninth Circuit noted that the statutes in question were essentially state venue provisions not to be elevated to the status of substantive abridgements of the federal court's jurisdiction to enforce its judgments. *Id.* at 418. "[S]tate rules are to be applied in a common sense manner and those which make sense only where applied to state courts need not be imported into federal practice." *Anderson v. Tucker,* 68 F.R.D. 461, 462–63 (D.Conn.1975) (quoted in *Duchek,* 646 F.2d at 418).

The federal District Court in *Davison v. Sinai Hospital* took a similar view of the statutes and rules we consider today. We agree with the *Davison* court that the legislature did not intend to limit the federal court's jurisdiction, and that common sense requires that the definition of

"court" found at § 3–2A–01(c) must encompass the federal District Court when jurisdictional requirements are met.

 Adopting this common sense definition, the requirements of Rules BY2 and BY4 become clear. Where the claimant or plaintiff is rejecting the arbitration award he or she must file both parts of the two-step action to nullify in the same court.[5] As we have noted, a rejecting plaintiff may combine both these steps in a single document. Indeed, the statute itself speaks neither of two documents nor of two steps. Section 3–2A–06(b) calls only for "an action in court to nullify the award...." The Otts filed such a document in the Circuit Court for Montgomery County and in this sense complied literally with the requirements of the Act. The document did not, however, contain sufficient allegations against Kaiser to constitute a valid complaint under Rule BY4. Thus, the Otts did not fully comply with the BY Rules.

## II

Having determined that the Otts did not comply with the Rules' requirements to maintain the action in the circuit court, it remains to be seen whether the sanction imposed by the circuit court was appropriate. The Otts claim that they should be allowed to amend their complaint. Kaiser claims that the action was properly dismissed and the arbitration award properly confirmed as to it.

Although the statutes, rules, and case law provide guidance as to the prerequisites to bringing an action in either the circuit court or the federal district court, we are persuaded that there is some cause for confusion. We note also that the Otts did not have the benefit of our recent decision in *Cherry* at the time the pleadings in this case

---

**5.** With respect to a federal court, this would depend on the extent to which the federal court would deem this substantive for *Erie* doctrine purposes.

were filed. Nor did they have any extensive opportunity to analyze our decision in *Tranen*.[6]

Kaiser bases its argument on language in the Court of Special Appeals' opinion in its *Tranen v. Aziz*, 59 Md.App. 528, 476 A.2d 1170 (1984), which we affirmed. In that *Tranen*, the Court of Special Appeals stated that the failure of a claimant to file a complaint after rejecting the award and filing a notice of action would warrant confirmation of the award. *Id.* at 533, 476 A.2d at 1173. But the facts in *Tranen* disclose that neither the notice of rejection nor the notice of action was timely filed. Thus the language relied upon by Kaiser is dictum. Moreover, language to that effect was conspicuously omitted from our opinion affirming the Court of Special Appeals. *See Tranen*, 304 Md. 605, 500 A.2d 636.[7]

In our *Tranen*, the decision to uphold the dismissal of the action to nullify was based in part on the plaintiff's failure to take the "final step in the arbitration procedure." 304 Md. at 612, 500 A.2d at 639. We noted the important role played by the director of the Arbitration Office, since the finality of the award hinges on the notice of rejection filed with that official. Attempting to "bypass" the director was not compliance with the Act. *Id.* at 613, 500 A.2d at 640. The failure to perfect the claim warranted dismissal. *Id.* One essential element of the cause of action was missing.

In *Cherry v. Brothers*, on the other hand, dismissal was found to be inappropriate where the plaintiffs miscaptioned pleadings—at most a rule violation. The error in *Cherry* did not affect substantial rights of the defendants because they were not misled. 306 Md. at 91, 507 A.2d at 617 (citing former Rule 320 a 4). We held that the error should have been disregarded or, alternatively, that plaintiffs should have been allowed to amend the pleadings. But we ex-

---

**6.** *Tranen* was filed 2 December 1985, less than a month before the complaints were filed in the circuit court and federal district court, and two days after the notice of action was filed.

**7.** Very recently, the Court of Special Appeals rejected the very same dictum in *Golub v. Spivey*, 70 Md.App. at 158, 520 A.2d at 400.

pressly declined to address the role, if any, of the prejudicial impact of the plaintiffs' error on the appropriateness of dismissal as a sanction. *Id.* at 86–87, 507 A.2d at 614.

In *Tranen,* then, there was a lack of compliance with the requirements of the Act. The failure to file either timely notice of rejection or timely action to nullify implicated important concerns underlying the policy of the Act, and amounted to inexcusable circumvention of the Act's mandatory procedures. 304 Md. at 614, 500 A.2d at 640. *Cherry* did not involve a departure from the statute; there was no more than a trivial departure from the form prescribed by the Rules. This case falls somewhere between the two.

 Of course compliance with the Act's requirements is a condition precedent to the maintenance of a medical malpractice action in any court. *Cherry,* 306 Md. at 88–89, 507 A.2d at 615; *Tranen.* But as *Cherry* shows, substantial compliance with the Rules is sufficient if the purpose of the Rules is gratified.

 The Otts filed a timely notice of rejection. They timely filed in the Circuit Court for Montgomery County a document entitled "Action to Nullify Award." As we have already explained, there is no reason why such a document, when filed by claimants-plaintiffs, may not include both the notice of action to nullify and the complaint required by the BY Rules. *Osheroff v. Chestnut Lodge,* 62 Md.App. 519, 490 A.2d 720, *cert. denied,* 304 Md. 163, 497 A.2d 1163 (1985). That is, the Act's requirement that judicial proceedings be commenced by filing an action to nullify, § 3–2A–06(b), may be met, in circumstances like these, by a single document, if it complies with the time, information, and service requirements of Rules BY2 and BY4. The "Action to Nullify Award" filed by the Otts did comply with the provisions of Rule BY2. It did not contain sufficient factual allegations to constitute a viable complaint under Rule BY4. But, as we have seen, the Otts did timely file a complaint, with seemingly sufficient allegations, in the U.S. District Court for the District of Columbia.

All of these papers were served on Kaiser. Like the health care providers in *Cherry* and in *Osheroff,* Kaiser could not have been misled about the Otts's rejection of the award or their intent to pursue a malpractice action against it. All this information was conveyed in timely fashion and adequate detail; the only uncertainty was in which court Kaiser might have to defend. In short, the requirements of the Act and the essential requirements of the Rules were met; the Otts touched all the fundamental bases.

■ That being so, we do not believe dismissal of the action was appropriate. There is no subject matter jurisdiction problem here. The difficulty is that the Otts's "Action to Nullify Award" filed in Montgomery County did not contain sufficient allegations to amount to a valid complaint. But while the Rule BY4 a 1 requirement that a complaint be filed within 30 days of the filing of the notice of action is mandatory, the rule states no consequences for noncompliance. In this situation, Rule 1–201 instructs that "the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule."

In short, whether to dismiss became a matter for the exercise of Judge Mitchell's discretion. *See Parren and Bright v. State,* 309 Md. 260, 281–82, 523 A.2d 597, 607 (1987); *State v. Lyles,* 308 Md. 129, 139, 517 A.2d 761, 766 (1986) (Eldridge, J., concurring); *Golub,* 70 Md.App. at 156–58, 520 A.2d at 399–400. We hold that he abused his discretion when he dismissed the Otts's action because of an insubstantial noncompliance with the BY Rules—a noncompliance which in no way subverted the policy served by those rules, and which amounted to little more than the filing of a complaint which would be subject to dismissal for failure to state a claim, but with leave to amend.

Because of this abuse of discretion we must reverse the dismissal order. And because of that we must also reverse the confirmation of the award. Since the notice of rejection

had been filed, and the action to nullify now remains pending, confirmation of the award is clearly improper.

As we have noted, however, the Otts's "Action to Nullify Award" is deficient in terms of its failure to allege facts that would state a cause of action against Kaiser. On remand, the Otts may either amend this document, or amend their complaint against Dr. Levitt, to supply this lack. Since Kaiser throughout these proceedings has been on notice of the Otts's intention to press their claim against it, amendment to include Kaiser and their claim against it will work no injustice. Amendment is consistent with Maryland's "liberal policy in permitting amendments so that causes of action may be determined on the merits." *Cherry*, 306 Md. at 92, 507 A.2d at 617; *see* Md.Rule 2–341(c); *see also Crowe v. Houseworth,* 272 Md. 481, 325 A.2d 592 (1974).

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED. CASE REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. APPELLEE TO PAY THE COSTS.*

McAULIFFE, J., dissents.

McAULIFFE, Judge, dissenting.

I cannot agree with the majority because I find the conclusions reached with respect to the federal case too stringent and those reached with respect to the state case too lax.

The Plaintiffs in this case complied fully with Maryland's statutory requirement that they submit their malpractice claims to nonbinding arbitration before bringing a civil action in court. When they were unsuccessful before the arbitrators, the Plaintiffs timely filed and served the required notice of rejection of the award. This set the stage for the filing of a civil action—a process that became

somewhat complicated by the Plaintiffs' tactical decision [1] to sue the doctor in the Circuit Court for Montgomery County, Maryland, but to sue the doctor's alleged principal in the United States District Court for the District of Columbia.

With respect to their claim against the doctor, counsel for the Plaintiffs followed the applicable statute and rules of procedure to the letter. They commenced the action by filing the required notice in the Circuit Court for Montgomery County within thirty days of service of the award upon them, and within thirty days of that filing, they filed and served their complaint against Doctor Levitt.

The Plaintiffs ran into trouble, however, in their attempts to decipher the meaning of the statute and the rules with respect to the procedural requirements for proceeding against Kaiser-Georgetown in a federal court. Their confusion is understandable. It is not attributable to any apparent lack of diligence or understanding on their part, but rather to the facts that in passing the statute the Maryland Legislature overlooked the possibility that this situation would arise, and we overlooked it in approving the implementing rules of procedure. Section 3–2A–06 of the Courts and Judicial Proceedings Article of the Maryland Code (1974, 1984 Repl.Vol.) provides that the party rejecting the award "shall file an action in court to nullify the award...." Section 3–2A–01, which sets forth specific definitions for this brief subtitle, provides in subsection (c) that "'[c]ourt' means a circuit court for a county." Rule BY2 of the Maryland Rules of Procedure provides that an action to nullify an award "shall be commenced by filing notice of the action with the clerk of the court...."

Counsel for the Plaintiffs' next step was a prudent one— they filed the notice of action against Kaiser-Georgetown in

---

**1.** Plaintiffs' counsel likely were influenced by the holding of the District of Columbia Court of Appeals in *Kaiser-Georgetown Community Health Plan, Inc. v. Stutsman,* 491 A.2d 502 (D.C.App.1985).

the Circuit Court for Montgomery County, Maryland. At the same time, and to prevent any possible confusion in the minds of their opponents or the court, they filed a "line" in the circuit court explaining their decision to proceed against Doctor Levitt in the circuit court and against Kaiser-Georgetown in the United States District Court for the District of Columbia. Within the required thirty days, the Plaintiffs filed a complaint against Kaiser-Georgetown in the federal court. They apparently did not file an additional notice of action with the clerk of the federal court, nor did they refer to the arbitration award in their federal complaint.

The majority adopts a "common sense" interpretation of § 3–2A–01(c) of the Courts and Judicial Proceedings Article, so that the words " '[c]ourt' means a circuit court for a county" are understood to mean " '[c]ourt' means a circuit court for a county or any other court having jurisdiction." I can appreciate the need for this judicial interpretation of the statute, but I cannot accept the notion that the Plaintiffs should have understood and anticipated this interpretation. The Plaintiffs were painstakingly careful in their attempt to comply with the requirements of our statute and rules, and although their efforts were not precisely consistent with the interpretation we have now announced,[2] the inconsistency is of no substantial importance because all the parties have been given all the notice that the statute and rules contemplated, and all filings have been timely made.

---

**2.** The majority holds, and I agree, that the correct procedure to be followed to accomplish a multiple court filing following arbitration is to file a notice of action and complaint (or a complaint that includes the notice) against a defendant in the court in which the plaintiff elects to proceed against that defendant, and to refrain from filing a notice as to any defendant in a court where the plaintiff does not intend to proceed against that defendant. In this case, therefore, the notice filed in the Circuit Court for Montgomery County should not have included Kaiser-Georgetown, and the notice against Kaiser-Georgetown should have been filed in the federal court, or included in the complaint filed in that court.

The majority implies that the failure to include a notice of action in the federal filing may constitute a fatal departure from Maryland procedural requirements. Under the circumstances of this case, I disagree. The required use of the two-step process to initiate a judicial action following arbitration is solely to accomodate the situation of a health care provider who wishes to nullify an award. The two-step process serves no useful purpose where the claimant is the party rejecting the award, except possibly to inform the court that the Plaintiff has submitted to arbitration before bringing the action. That allegation could as well be made in the complaint, and its omission is one that ordinarily may be corrected by amendment. *Maguire v. Federal Crop Ins. Corp.*, 181 F.2d 320 (5th Cir.1950); 2A *Moore's Federal Practice,* § 9.04 (2d ed. 1984). The parties and the Director of the Health Care Arbitration Office received timely notice of precisely what actions the Plaintiffs were taking when they were served with copies of the notice and the "line" that Plaintiffs had filed in the circuit court. It is not our place to pass upon the sufficiency of the federal complaint, but I would make it clear that Plaintiffs have committed no fatal error as far as the Maryland procedural requirements are concerned. They at least substantially complied with those requirements.

Turning to the action taken by the Circuit Court for Montgomery County, I agree that the circuit judge was in error in dismissing with prejudice the action against Kaiser-Georgetown, and in confirming the arbitration award in favor of that Defendant. In their attempt to assidously follow the direction of the Maryland statute by filing a notice of action against Kaiser-Georgetown in the Circuit Court for Montgomery County, the Plaintiffs unwittingly began an action against Kaiser-Georgetown in Maryland. Without delving into the question of whether the Plaintiffs might properly pursue, or at least initiate, their claim against Kaiser-Georgetown simultaneously in two jurisdictions, I would simply note that which is obvious and that

which Plaintiffs themselves spelled out quite clearly—that they had no intention of bringing their judicial claim against Kaiser-Georgetown in Maryland. Under these circumstances, the circuit judge should have dismissed the action against Kaiser-Georgetown without prejudice, thus clearing the docket in the circuit court and allowing the claim against Kaiser-Georgetown to proceed in the federal court.

I am disturbed by the majority holding that it is within the discretion of the trial judge to allow the Plaintiffs to amend their action in Maryland to include a complaint against Kaiser-Georgetown. Assuming, without conceding, that an amendment might in some circumstances be allowed to permit the filing of a complaint against a defendant where nothing resembling a complaint had been filed within thirty days after the filing of a notice, I believe it would be improper to permit that amendment here. The Plaintiffs, for their own tactical reasons, elected to proceed against Kaiser-Georgetown in a federal court in the District of Columbia. This was not an oversight. The Plaintiffs did exactly what they intended to do, and they announced their election to the world. They deliberately allowed the thirty days to expire without filing a complaint against Kaiser-Georgetown in Maryland, and they should not at this late date be permitted to change their mind and amend the Maryland action to include Kaiser-Georgetown. I agree that amendments to pleadings should be freely allowed to serve the ends of justice, but I would not permit such an amendment of a notice by the addition of a complaint more than thirty days after the filing of the notice, and particularly I would not permit such amendment where the failure to timely file the complaint was the product of a considered decision on the part of the Plaintiff.

I would reverse the judgment of the Circuit Court for Montgomery County and remand the case with instructions to dismiss without prejudice the Plaintiffs' action against Kaiser-Georgetown.